# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **Z.R.**

**No. 19-1057** (Wayne County 19-JA-6)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.L., by counsel Timothy Rosinsky, appeals the Circuit Court of Wayne County's October 18, 2019, order terminating his parental rights to Z.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Shawn Bartram, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition alleging that the mother had abused or neglected Z.R. In July of 2019, after paternity testing confirmed that petitioner was the child's father, the DHHR amended the petition and alleged that petitioner failed to establish paternity of the child, despite a reasonable basis to believe he was the father; failed to bond with the child; and failed to financially or emotionally support the child.

Later in July of 2019, the circuit court convened for a preliminary hearing, which petitioner waived. Petitioner testified that he learned the mother suspected that he was child's father when the West Virginia Bureau of Child Support Enforcement contacted him sometime in 2017. Petitioner requested paternity testing at that time and indicated that he did not learn the results of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

the testing until May of 2019. Further, petitioner denied having any contact with the mother, who was failing to comply with services at the time, and denied that he was in a relationship with her. When questioned why the mother's social media profile announced that she was in a relationship with petitioner, he again denied that he was in contact with her. Petitioner submitted a drug screen that was negative for controlled substances.

At the adjudicatory hearing in August of 2019, petitioner stipulated to the allegations that he failed to establish paternity and to financially support the child. Petitioner also testified that he rekindled his relationship with the mother in June of 2019, and took her back to Indiana with him, where he had lived since 2017. He admitted that he and the mother sanitized a social media page in order to deceive the circuit court about their relationship. The circuit court adjudicated petitioner as an abusing parent based on his stipulation and testimony, and ordered that petitioner pay fifty dollars per month in child support and participate in scheduled supervised visitations. In September of 2019, the mother's parental rights were terminated due to her failure to participate in an improvement period and court proceedings.

In October of 2019, the circuit court held a dispositional hearing, and petitioner moved for a post-adjudicatory improvement period. Following the prior hearing, petitioner participated in a single supervised visitation with Z.R., but left prior to the scheduled parenting class. Petitioner testified that he was aware that he had been ordered to pay child support and acknowledged that he had not yet made any payments because he had been "just putting it off, to be honest." Petitioner asserted he was employed full time and had the money available to pay the delinquent amount. Petitioner further testified that, since the last hearing, he had been arrested and charged with operating a vehicle without a license, possession of marijuana, and possession of a handgun without a license. Finally, petitioner initially denied any relationship with the mother; however, on cross-examination, he admitted that their relationship was ongoing. Petitioner acknowledged prior warnings from the circuit court and counsel that continued contact with the mother would jeopardize his parental rights to Z.R. Petitioner testified that "if I can't keep my wife [the mother], I want my son in my life. I'll keep my son, and I'll get rid of [the mother]."

Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated his parental rights. The court considered that petitioner was in a relationship with the mother at the time Z.R. was conceived, yet noted that he made no effort to establish paternity, provide support, or form a bond with the child. As a result, Z.R. was two and a half years old and had no relationship with petitioner. The circuit court further considered that petitioner failed to pay child support after it was ordered and continued to misrepresent his relationship with the mother, whose parental rights to Z.R. had been previously terminated. Finally, the court considered petitioner's recent criminal charges and reasoned that "those cases are not likely to be over in time for us to determine if he has stability in Indiana." Based on this evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was contrary to the

welfare of the child to be reunified with petitioner. The circuit court memorialized its decision by its October 18, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. Petitioner "pledged" to the circuit court that he would choose his son over the mother, pay his entire child support obligation, and fully cooperate in an improvement period. He avers that this testimony was clear and convincing evidence that he was likely to fully participate in a post-adjudicatory improvement period. Petitioner acknowledges that "[h]is sin, essentially, is emotional and financial abandonment of his [two-and-a-half-]year[-]old son. For two years that was true. But, he returned . . . to show his commitment to his son after paternity was confirmed." We find petitioner's argument to be without merit.

West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a parent a post-adjudicatory improvement period when he "demonstrates, by clear and convincing evidence, that [he] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. He failed to pay his child support obligations, despite his admission that he had the funds available, and failed to participate in parenting classes. More concerning, petitioner continually misled the circuit court regarding his relationship with the mother. Petitioner argues

---

[2]As mentioned above, the mother's parental rights were terminated in September of 2019. According to the parties, the permanency plan for the child is adoption in his current foster placement.

on appeal that he was never explicitly ordered not to associate with the mother. However, petitioner acknowledged at the dispositional hearing that continued contact with the mother would jeopardize his parental rights. Moreover, the broader issue in petitioner's consistent attempts to hide this relationship is his credibility. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Considering that petitioner's testimony was frequently dishonest and misleading, we find no error in the circuit court disregarding petitioner's self-serving statements that he would comply with services and relying, instead, on his actions during the proceeding, specifically his failure to participate in parenting classes or pay child support. We find that the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Further, petitioner argues that the circuit court erred in terminating his parental rights because it should have granted him an improvement period. Petitioner asserts that when the circuit court denied his motion for an improvement period, "it really had no choice but to terminate his parental rights." However, this is not an accurate statement of the possible dispositions available to the circuit court. *See* W. Va. Code § 49-4-604(b)(1)-(6) (2019).[3] Notably, petitioner did not request any less-restrictive dispositional alternatives other than a post-adjudicatory improvement period. Rather, the circuit court properly terminated petitioner's parental rights based on its finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected, which petitioner entirely ignores on appeal. West Virginia Code § 49-4-604(b)(6) (2019) provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Petitioner's "sin" of "emotional and financial abandonment of his [two-and-a-half-]year[-]old son" is recognized in West Virginia Code § 49-4-604(c)(4) (2019) as one of the circumstances where a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.[4] Therefore, we conclude that the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future is supported by the record and by petitioner's admission on appeal. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

[4]West Virginia Code § 49-4-604(c)(4) (2019) provides that a circuit court may find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "the abusing parent or parents have abandoned the child."

can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 18, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison